# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ROBERT J. MEIER, ) | | |
| Debtor. ) | | |
| ) | 15 C 3434 | |
| ROBERT J. MEIER, ) | | |
| Plaintiff, ) | Judge John Z. Lee | |
| v. ) | | |
| ROBERT B. KATZ, trustee, ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

Robert J. Meier filed for individual bankruptcy under Chapter 11 in 2014. He then converted his case to a case under Chapter 7, which raised the question of whether the money Meier had earned after the commencement of the proceedings belonged to him or the Chapter 7 estate. A creditor filed a motion, which was joined by the Chapter 7 trustee, seeking to compel Meier to turn over the funds to the Chapter 7 estate. The bankruptcy court granted the motion, and Meier appealed. For the reasons stated below, the Court affirms the bankruptcy court's ruling.

## Factual and Procedural Background[1]

On March 20, 2014, Robert J. Meier filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code. While the case was proceeding under Chapter 11, Meier continued working and deposited his earnings into a Debtor in Possession ("DIP") account. Unable to effectuate a

---

[1] The facts and procedural history are taken from the bankruptcy court's memorandum opinion and are undisputed. *See* Memorandum Opinion, Record, Ex. 2 at 23, ECF No. 6.

reorganization under Chapter 11, Meier converted his case from Chapter 11 to one under Chapter 7.

One of Meier's creditors subsequently filed a motion to compel Meier to turn over the funds deposited in the DIP account to the Chapter 7 trustee. The trustee, who was appointed when the case was converted to Chapter 7, joined the creditor's motion. In response, Meier argued that the earnings were not property of the Chapter 7 estate because they arose after he had filed his original bankruptcy petition. Alternatively, he argued that 85 percent of the funds were exempt from becoming property of the estate pursuant to the Illinois Wage Deduction Act, 735 Ill. Comp. Stat. 5/12-803.

The bankruptcy court sided with the trustee on both arguments and ordered that the funds in the DIP account be turned over to the trustee. Meier appealed.

## **Legal Standard**

In reviewing bankruptcy court decisions, the Court reviews questions of law de novo and factual findings for clear error. *See Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014).

## **Analysis**

**I.     Effect of Conversion on the Property of the Estate**

Chapter 11 and Chapter 7 offer two different avenues for individuals seeking to avail themselves of the bankruptcy process. Regardless of which chapter a debtor chooses, the commencement of a bankruptcy case creates an "estate" consisting of property of the debtor. Generally speaking, a Chapter 11 estate includes property owned by the debtor at the time that the case is commenced, as well as any income earned by the debtor after the bankruptcy petition is filed. 11 U.S.C. § 1115(a)(2). Chapter 11, like Chapters 13 and 12, allows the debtor to use his property and post-petition income to pay creditors on a going forward basis.

Under Chapter 7, a trustee sells the assets of the estate, and the proceeds are distributed to the debtor's various creditors. *See* 11 U.S.C. §§ 704(a)(1), 726. After the debts are discharged, the debtor is able to make a fresh start "by shielding from creditors his postpetition earnings and acquisitions." *See Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). The estate under Chapter 7 excludes "earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

Meier initially filed his bankruptcy proceeding under Chapter 11 and later converted it to Chapter 7. It is undisputed that, prior to the conversion, the money Meier had earned and deposited in the DIP account belonged to the Chapter 11 estate.

Section 348 governs the effect of conversion from one chapter to another. 11 U.S.C. § 348. Under § 348(a), "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but . . . does not effect a change in the date of the filing of the petition."

Section 348 also contains subsection (f), which governs the fate of post-petition earnings when a case is converted from Chapter 13. Similar to § 1115(a)(2) under Chapter 11, § 1306(a)(2) provides that an estate under Chapter 13 includes any "earnings from services performed by the debtor after the commencement of the case." 11 U.S.C. § 1306(a)(2). When a debtor converts a case from Chapter 13 to another (including Chapter 7), subsection (f) of § 348 provides that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession . . . of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). In other words, under § 348(f), when a bankruptcy case is converted from Chapter 13 to Chapter 7, the Chapter 7 estate does not include earnings made by the debtor after the commencement of the case. There is no provision, either in § 348 or

3

elsewhere in the Bankruptcy Code, that specifically lays out what happens to post-petition earnings when a debtor first files a petition under Chapter 11 and later converts the case to Chapter 7.

That is the question presented here. Specifically, once Meier converted his bankruptcy case from Chapter 11 to Chapter 7, did his post-petition earnings remain property of the estate (now a Chapter 7 estate, rather than a Chapter 11 estate), or did they now belong to him as though he had been proceeding under Chapter 7 all along? No circuit court has addressed this question to date, and the lower courts that have are split. *Compare In Matter of Freeman*, 527 B.R. 780, 789–97 (Bankr. N.D. Ga. 2015) (holding that post-petition earnings by an individual debtor in Chapter 11 remain part of the estate after conversion to Chapter 7), *In re Tolkin*, 2011 WL 1302191, at *10 (Bankr. E.D.N.Y. 2011) (same), *and In re Hoyle*, 2013 WL 3294273, at *5–7 (Bankr. D. Idaho 2013) (same), *with In re Markosian*, 506 B.R. 273, 275–77 (B.A.P. 9th Cir. 2014) (holding that post-petition earnings revert to the debtor after conversion to Chapter 7), *and In re Evans*, 464 B.R. 429, 438–41 (Bankr. D. Colo. 2011) (same).

The cases all grapple with the same question of statutory construction, namely, did the enactment of § 348(f) create a new point of procedure (that is, that once a case is converted from Chapter 13 to Chapter 7, the estate would consist only of the debtor's property at the time of the original petition), or did it provide just one example of a broader right already created by § 348(a) (that is, that once any bankruptcy case, whether Chapter 13, 11, *or* 12, is converted to another chapter, the matter would proceed as though it had been under the new chapter from the beginning). The bankruptcy court concluded the former; Meier argues the latter.

The Court begins its analysis by looking at the language of § 348. *See In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 707 (7th Cir. 2015) ("Statutory interpretation begins with

4

the language of the statute."). "When the plain wording of the statute is clear, that is the end of the matter." *United States v. Webber*, 536 F.3d 584, 593 (7th Cir. 2008). "The 'plain meaning' of a statute, however, is often illuminated not only by its language but also by its structure." *Id.*

Here, the language of § 348(a), considered in isolation, could be read to support Meier's position. Under this reading, Meier's conversion of his Chapter 11 case to Chapter 7 "does not effect a change in the date of the filing of the petition," and the Chapter 7 case would be deemed to have started when the Chapter 13 petition was first filed. Construed in this way, Meier's earnings post-petition would belong to him and not to the newly formed Chapter 7 estate.

But we must be mindful of § 348(f). After all, that subsection addresses the very situation that faces us here—although in the context of Chapter 13 proceedings—and expressly provides that the resulting estate would consist only of "property of the estate, as of the date of filing of the petition," and not post-petition earnings such as those at issue here. Section 348(f) is important for two reasons. First, given that subsection (f) specifically lays out what happens to an estate when a case is converted from one chapter to another, it is difficult to see how the less specific (and arguably less applicable) language of § 348(a)—that a conversion "does not effect a change in the date of the filing of the petition"—can be read to address the same issue. Indeed, § 348(a) does not mention "estates" at all, and the Seventh Circuit itself noted the opaqueness of § 348(a)'s language in a case that led to § 348(f)'s enactment. *See In re Lybrook*, 951 F.2d 136, 137 (7th Cir. 1991) (noting that a plausible reading of § 348(a) is that it "assures the continuity of the case for purposes of filing fees, preferences, statutes of limitations, and so forth").

Second, when viewed in light of the statutory construction tool *expressio unius est exclusio alterius* ("to express or include one thing implies the exclusion of the other," Black's Law Dictionary (10th ed. 2014)), it is significant that § 348(f) mentions only cases converted

5

from Chapter 13 and does not include conversions from Chapter 11 or 12. As further discussed below, Congress certainly had Chapter 12 in mind when enacting § 348(f) in 1994 and had the opportunity to include Chapter 12 and Chapter 11 when it revised § 348(f) in 2005. But, in both instances, Congress limited the reach of § 348(f) to Chapter 13 cases.

As mentioned, Meier argues that the proper reading of § 348 is that subsection (a) states the general rule that applies in this case and subsection (f) is merely a clarification of that rule as to Chapter 13. That is also the rationale of the two courts that have reached same conclusion. *See Markosian*, 506 B.R. at 276; *Evans*, 464 B.R. at 439–40. But there are two significant problems with this construction. First, there is nothing in § 348(a) to suggest that subsection (f) was meant to be a clarification or illustration of (a), and subsection (f) makes no mention that (a) is the general rule. Second, § 348(f) goes further than simply clarifying § 348(a) as Meier suggests. In fact, § 348(f)(2) provides that "[i]f the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." This bad-faith exception is nowhere to be found in § 348(a) and cannot be derived from its language.

Next, Meier appeals to the context and legislative history of § 348(f) to support his view that a conversion from Chapter 11 should be treated the same as one from Chapter 13. A brief account of the circumstances surrounding § 348(f)'s enactment and its subsequent revision would be helpful here.

Before Congress added subsection (f) in 1994, there was a split among circuit courts as to what property remains part of the estate after a bankruptcy case is converted from Chapter 13 to Chapter 7. In *In re Lybrook*, the Seventh Circuit held that § 348(a) did not conclusively determine what should be done with post-petition earnings when a case is converted from

6

Chapter 13 to Chapter 7. 951 F.2d at 137. Because the court held that the question was not answered by the statutory language itself, the court considered the policies underlying the Bankruptcy Code and determined that once a debtor's earnings became part of the Chapter 13 estate, they remained so even after a conversion to Chapter 7. *See id.* at 137–38 ("On the Lybrooks' interpretation, Chapter 13 shifts all downside risk to the creditors and all upside potential to the debtor."). The Third Circuit, albeit in dicta, came to the opposite conclusion based upon countervailing policies. *See In re Bobroff*, 766 F.2d 797, 803 (3d Cir. 1985) ("If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished.").

In 1994, Congress resolved the dispute by adding § 348(f) as part of the Bankruptcy Reform Act of 1994. Pub. L. No. 103-394, § 311, 108 Stat. 4107, 4138. The section-by-section analysis of the Act, which was read into the Congressional Record, contained the following description of the newly added § 348(f):

> This amendment would clarify the Code to resolve a split in the case of law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee

> would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.
>
> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

140 Cong. Rec. 27,697–98 (1994).

According to Meier, by enacting § 348(f), Congress expressed its disagreement with *Lybrook* that § 348(a) was ambiguous and made explicit its original intent that, upon conversion, the resulting estate is governed by the new chapter as though the case had been so filed in the first instance. But again neither the legislative history nor the statutory language supports this view.

Nothing in the 1994 amendments suggests that Congress intended to change the meaning of § 348(a). Instead, Congress acknowledged a problem and enacted a provision, subsection (f), to address it. Once again, the bad-faith exception in subsection (f) aids the analysis. In enacting § 348(f), Congress sided with cases like *Bobroff*, but was careful to add a safety valve for the types of situations that the Seventh Circuit was worried about in *Lybrook*. Thus, Congress's solution to the circuit split was not to reject *Lybrook*'s interpretation of § 348(a) as incorrect, but to create an entirely new provision that set out the preferred result and provided a remedy for conversions performed in bad faith.

This interpretation of the amendments is bolstered by the legislative history. When the 1994 amendments were proposed, post-petition funds earned by the debtor in Chapter 12 were part of the estate, just as they were in Chapter 13. *See* 11 U.S.C. § 1207(a)(2). And, just as in Chapter 13 cases, courts wrestled with the issue of whether post-petition earnings continued to be part of the estate when a Chapter 12 case is converted to Chapter 7. *See, e.g.*, *In re White*, 25

F.3d 931, 933 (10th Cir. 1994) (holding that post-petition earnings remained in the estate after the case was converted from Chapter 12 to Chapter 7). The legislative history demonstrates that Congress was aware of this problem in 1994 when it enacted § 348(f). *See* 140 Cong. Rec. 27,697 ("The problem arises because in chapter 13 (and chapter 12) . . . ."). Yet, despite knowing that the "problem" existed for Chapter 12 cases, Congress limited the application of § 348(f) to Chapter 13.

The issue as to what constitutes an estate after a conversion evolved slightly differently under Chapter 11. At the time Congress enacted § 348(f), the estate in an individual Chapter 11 case was determined by § 541(a)(6). Under that general provision, the proceeds and profits from property of the debtor were included in the estate, but earnings from services performed by the debtor were not. *See* 11 U.S.C. § 541(a)(6). This rule created problems when, for example, an individual debtor owned his own law practice. In such cases, courts had to perform the unenviable task of disaggregating the portion of the debtor's income attributable to services performed by the debtor from that attributable to invested capital, accounts, and good will. *See, e.g.*, *In re FitzSimmons*, 725 F.2d 1208, 1209–12 (9th Cir. 1984).

In 2005, Congress stepped in and simplified Chapter 11 by adding § 1115(a)(2), which made post-petition earnings part of the estate in Chapter 11 cases. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 321, 119 Stat. 23, 94–95. At the same time, Congress also made substantial changes to § 348(f), altering the language of subsection (f)(1)(B) and adding (f)(1)(C). *See* § 309, 119 Stat. at 82. Again, however, Congress did not bring conversions from Chapter 11 or Chapter 12 within the scope of § 348(f).

Meier nevertheless cautions the Court not to read too much into Congress's silence as to Chapters 11 and 12 in § 348(f), citing *Castro v. Chicago Housing Authority*, 360 F.3d 721, 729

(7th Cir. 2004). But that case presents circumstances far different from this one. In *Castro*, the Seventh Circuit found no basis, "from either the statute itself or legislative history," to infer anything from congressional silence other than that Congress was silent on the issue. *See id.* ("[A]ll we can deem from congressional silence on the issue is just that—that Congress was silent on the issue."). Here, in contrast, the statutory language of § 348(a) and § 348(f) and the legislative history in 1994 and 2005 provide ample support that Congress had the knowledge and opportunity to include Chapter 11 and Chapter 12 within the scope of § 348(f), but elected not to do so. "[C]ourts must presume that a legislature says in statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

Meier's final argument lies solely in policy: Why should Chapter 11 (and Chapter 12) be treated differently from Chapter 13?[2] According to Meier, the logic supporting § 348(f)—as expressed in the legislative history—applies to Chapter 11 as well. But, as the trustee points out, there are numerous procedural and substantive differences between Chapter 11 and Chapter 13 proceedings. For instance, individuals may not file under Chapter 13 unless their debts are below a certain threshold, but there is no such threshold for individuals who wish to file under Chapter 11. *See* 11 U.S.C. § 109(d)–(e). Debtors cannot be forced to file a Chapter 13 case, while creditors can force a debtor into a Chapter 11 bankruptcy. 11 U.S.C. § 303(a). The differences between Chapter 13 and Chapter 11 are replete with policy considerations, and Congress is better equipped at making these policy choices than the courts.

For all of these reasons, the Court affirms the bankruptcy court's ruling that Meier's post-petition earnings were part of the Chapter 7 estate.

---

[2] The leading bankruptcy treatise, which agrees with Meier's interpretation, says that treating Chapter 13 and Chapter 11 the same, "although logical, is not clear." 7 Collier on Bankruptcy ¶ 1115.04[1] (16th ed. 2015).

## II. Illinois Wage Deduction Act

Alternatively, Meier argues that 85 percent of his earnings should be exempt from becoming property of the estate. Under the Bankruptcy Code, property of the estate does not include property that is exempt under state law. *See* 11 U.S.C. § 522(b)(3)(A). Meier contends that the Illinois Wage Deduction Act ("IWDA") serves as a state law exemption and limits the portion of his earnings that become part of the estate. 735 Ill. Comp. Stat. 5/12-803 ("The wages, salary, commissions and bonuses subject to collection under a deduction order, for any work week shall be . . . 15% of such gross amount paid for that week.").

As an initial matter, courts in this district disagree as to whether the IWDA is an exemption that applies under § 522. *Compare In re Radzilowsky*, 448 B.R. 767, 769 (Bankr. N.D. Ill. 2011) (holding that the IWDA is not an exemption applicable to § 522), *In re Jokiel*, 2012 WL 33246, at *3 (Bankr. N.D. Ill. Jan. 5, 2012) (same), *and In re Koeneman*, 410 B.R. 820, 827 (C.D. Ill. 2009) (same), *with In re Mayer*, 388 B.R. 869, 874 (Bankr. N.D. Ill. 2008) (applying the IWDA as an exemption under § 522). The Court need not delve into this split, however, because the IWDA is not applicable to the facts of this case.

As the bankruptcy court correctly pointed out, the money at issue was already paid to Meier. To qualify as "wages", money has to be "owed by an employer to a judgment debtor." 735 Ill. Comp. Stat. 5/12-801. Because Meier was in possession of the earnings at issue, the IWDA is not applicable. *See Wienco, Inc. v. Scene Three, Inc.*, 29 F.3d 329, 330 (7th Cir. 1994) ("This Act permits a judgment creditor to obtain an order requiring the judgment debtor's employer to pay directly to the creditor up to fifteen percent of the debtor's income. 735 ILCS 5/12–803. The Act is clearly inapplicable; the district court's order is directed to [the debtor] himself and to no one else.").

## **Conclusion**

For the reasons stated herein, the bankruptcy court's order instructing that the funds in the DIP account be turned over to the trustee is affirmed. Civil case terminated.

**IT IS SO ORDERED.**                    **ENTERED    3/11/16**

_____
**John Z. Lee
United States District Judge**